UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMETRIUS D. HEMPHILL (N84682), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 1406 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| MICHAEL P. RANDLE et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER [REDACTED]**[*]

Pro se plaintiff Demetrius D. Hemphill, a Stateville Correctional Center ("Stateville")

inmate, brought a civil rights complaint pursuant to 42 U.S.C. § 1983. Pending before the Court

are Defendants' motion for summary judgment [50], Hemphill's motion for an extension of time

[66], Hemphill's motion for attorney representation [82], and Hemphill's motion for a status

hearing [83]. Because Hemphill has not established a genuine issue of fact as to whether

Defendants were deliberately indifferent to the known risk of assault by a fellow inmate,

Defendants' motion for summary judgment [50] is granted. Additionally, because Hemphill

filed three responses to Defendants' motion for summary judgment, his motion for extension of

time [66] is denied as moot.[1] Similarly, because the case is not particularly complex and

---

[*] The Court issues this Redacted Opinion and Order pursuant to its September 2, 2015 Order. *See* Doc. 115. The Court notes that this Opinion and Order was vacated on reconsideration, however, by its February 25, 2015 Order. *See* Doc. 103.

[1] This motion was filed on October 4, 2013. His original response to the summary judgment motion was filed on the docket on August 13, 2013. Doc. 57. Hemphill then sought an extension of time to file additional affidavits and a supplemental response. Doc. 59. Judge Feinerman, who was the assigned Judge prior to this case's reassignment to this Court, granted Hemphill's request for more time.

Hemphill has competently represented himself throughout these proceedings, Hemphill's motion

for attorney representation [82] is denied. Hemphill's motion for a status hearing [83] is denied

as moot, as this case is terminated.

## BACKGROUND[2]

Hemphill is currently serving a fifty-eight year sentence for murder at Stateville. On

January 22, 2010, Hemphill requested placement in protective custody. Hemphill explained that:

> I'm requesting protective custody because my life is in danger
> because of the case that I am in hear [*sic*] for. The guy they say I
> killed. His friends are in (F) House: A guy named [A], another
> name [B], and [C]. I have a case on one of their friends named
> [D]. Thank you very much to this matter at hand. Please have a
> very bless day.

Ex. C to Defs.' L.R. 56.1 Stmt.

Hemphill was in X house at the time he made the request for protective custody.

Although the record is not clear on this point, it appears that X house is in a different part of

Stateville from F House. Hemphill was placed in protective custody while his request was being

reviewed. Defendant Internal Affairs Officer Foster interviewed Hemphill to follow up on the

---

Doc. 60. Hemphill then provided affidavits from other inmates in support of his response. Doc. 63.
Hemphill thereafter filed his present motion for an extension of time. Doc. 66. While the motion for
extension of time was pending, Hemphill filed his most recent response. Doc. 71. This response fully
discusses the case and provides significant legal discussion. Hemphill has not filed an additional request
for time since filing his last response. The Court concludes that Hemphill has had three separate attempts
at filing his response. He has made his arguments in full. Thus, the motion for an extension of time, Doc.
66, is denied as moot.

[2] The facts set forth in this section are derived from the statements of fact submitted by the parties
to the extent they comport with Local Rule 56.1. They are taken in the light most favorable to Hemphill,
the non-movant. The Court has considered the parties' objections to the statements of fact and supporting
exhibits and included in this background section only those portions of the statements and responses that
are appropriately presented, supported, and relevant to resolution of the pending motion for summary
judgment.

protective custody request. During the investigation, Stateville inmates [A], [B], and a third inmate named [C] were identified as the individuals Hemphill listed as his enemies. Both [A] and [B] are convicted murders. During his deposition, Hemphill explained that his murder victim, [D], was a member of the Gangster Disciples street gang. [A], [B], and [C] are also Gangster Disciples, while Hemphill is not a Gangster Disciple. Hemphill stated that [A], [B], and [C] wanted to kill him in revenge for killing their fellow gang member. Foster concluded that Hemphill should not receive protective custody but should be kept separate from [A], [B], and [C]. This decision was approved by Defendants McKay, Franklin, and Hardy.

Hemphill appealed to the IDOC Administrative Review Board ("ARB"). Defendant Jackie Miller, the ARB chairman, agreed with the denial of protective custody and that Hemphill should be housed separately from [A], [B], and [C]. The ARB's decision was approved by Defendant IDOC Director Michael P. Randle, ending the review process.

While still in protective custody pending the results of his appeal, Hemphill was placed in a cell with an inmate whose last name is [E].[3] Hemphill spent a week or two with [E] as his cellmate. He had no issues with [E] and shared his food from the commissary with [E]. Hemphill never named [E] as an enemy or expressed any concerns about sharing a cell with him.

[E] is also a Gangster Disciple. Despite the fact that [A], [B], and [C] were separated from Hemphill by being housed in F House while Hemphill was in X House, they were purportedly able to get word to [E] of the dispute with Hemphill via a "kite." [E] then waited for an opportunity to surprise Hemphill and attack him. This attack occurred on April 19, 2010 and

---

[3] The record does not provide [E]'s first name. Defendants identify him as "[F]" in their Local Rule 56.1 Statement, but the supporting exhibits indicate that [F] had a different identification number than Hemphill's cellmate.

caused Hemphill significant injuries.  [E] concealed his gang affiliation from Hemphill until the

attack and only first mentioned it when assaulting Hemphill.

During his deposition, Hemphill explained how the attack by [E] was a surprise:

> Defense Counsel's Question: So, he [E] was certainly acting like
> he was on good terms with you [prior to the attack]?
>
> Hemphill's Answer: Yeah, playing games, playing the road.
>
> * * *
>
> Defense Counsel's Question: And up until that point, you had no
> idea that [E] was going to attack you, right?
>
> Hemphill's Answer: No, I didn't.
>
> Defense Counsel's Question: Okay, So, it was a complete surprise?
>
> Hemphill's Answer: Yeah.

Ex. B to Defs.' L.R. 56.1 Stmt. at 26–28.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and

assess the proof as presented in depositions, answers to interrogatories, admissions, and

affidavits that are part of the record.  Fed. R. Civ. P. 56 & advisory committee's notes.  The party

seeking summary judgment bears the initial burden of proving that no genuine issue of material

fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986).  In response, the non-moving party cannot rest on mere pleadings alone but must use the

evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue

4

for trial.  *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute,

*Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in

a light most favorable to the non-moving party and draw all reasonable inferences in that party's

favor.

## ANALYSIS

### I.       Motion for Summary Judgment

"Prison officials have a duty to protect prisoners from violence at the hands of other

prisoners." *Lewis v. Richards*, 107 F.3d 549, 552–53 (7th Cir. 1997) (citing *Farmer v. Brennan*,

511 U.S. 825, 831–33, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Langston v. Peters*, 100 F.3d

1235, 1237 (7th Cir. 1996)) (internal quotation marks omitted).  However, not every act of

inmate-on-inmate violence results in a constitutional violation.  *Borello v. Allison*, 446 F.3d 742,

747 (7th Cir. 2006).

Hemphill claims that Defendants were deliberately indifferent to the known risk of

assault from his fellow inmates.  The deliberate indifference standard contains both an objective

prong, requiring a grave risk, and a subjective prong, requiring actual knowledge of the risk.

*Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (citing *Greeno v. Daley*, 414 F.3d 645, 653

(7th Cir. 2005)).  As to the objective requirement, Hemphill must show that "(1) he suffered an

objectively sufficient serious injury; and (2) he was incarcerated under conditions posing a

substantial risk of serious harm." *Id*. (citing *Farmer*, 511 U.S. at 834).  A condition that poses a

substantial risk of harm is one where the "risks [are] so great that they are almost certain to

materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005).  This standard

5

has been analogized to placing a detainee in a cell with a cobra. *Id*. at 911 (citing *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995)).

On the subjective side, the official is deliberately indifferent resulting in a constitutional violation only if he "'effectively condones the attack by allowing it to happen.'" *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Lewis*, 107 F.3d at 553). "[D]efendants [must have] actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from defendants' failure to prevent it." *Santiago*, 599 F.3d at 756 (quoting *Lewis*, 107 F.3d at 553). "Mere negligence or even gross negligence does not constitute deliberate indifference." *Borello*, 446 F.3d at 749.

Defendants do not challenge that Hemphill suffered an objectively serious injury from the assault. Nevertheless, they contend that they are entitled to summary judgment because Hemphill never informed them of the gang-related threat presented by [E]. Defendants note that Hemphill only mentioned the individual dispute with [A], [B], and [C] without mentioning any connection to the Gangster Disciples. Thus, Defendants argue that they had no actual knowledge of any threat posed by [E] and cannot be liable for placing [E] and Hemphill together as cellmates.

The Court agrees with Defendants that there is no evidence suggesting that they would have any reason to believe that [E] posed a threat to Hemphill. As Hemphill concedes, he had no fear of [E] while the two shared a cell for over a week. He only became aware of [E]'s gang connection when [E] told him during the surprise assault.

In response, Hemphill argues an inmate does not always have to demonstrate that he faced a specific threat from a specific source when the correctional official knows that the inmate

6

faces a heightened risk. *Brown*, 398 F.3d at 914–16. He states that Defendants could have easily

reviewed [E]'s file and determined that [E] was a member of the Gangster Disciples. Armed

with this information, Defendants should not have housed Hemphill with [E] because of

Hemphill's dispute with the Gangster Disciples. *See id*. at 915 (citing *Langston*, 100 F.3d at

1238–39) (deliberate indifference can be based on jailer's knowledge that inmate is likely to be

targeted by gangs).

But the problem with this argument is that there is no evidence in the record to support

the fact that any prison official knew that Hemphill's problem was with the Gangster Disciples

as a whole and not with the three specific individuals he had identified in his request to be placed

in protective custody. *See Santiago*, 599 F.3d at 756 (defendants must have knowledge of the

risk of harm to be held liable). Hemphill's written request for protective custody excludes any

mention of a gang dispute, instead only identifying [A], [B], and [C] as "friends" of the

individual Hemphill allegedly killed. Nor is there evidence in the record that Hemphill

mentioned a gang dispute or identified [A], [B], [C], and the individual he killed as Gangster

Disciples in his interview with Foster. Additionally, [E] concealed his gang affiliation while he

was living with Hemphill until the attack itself, and Hemphill had no concerns with [E] prior to

the attack. There was thus no reason for Defendants to believe anything more than that Hemphill

faced a threat from the three specific individuals he identified and that Hemphill should be kept

separated from them, a step that Defendants recommended. Consequently, this is not a case like

*Hill v. Godinez*, where the plaintiff informed the defendant about the Gangster Disciples' prior

hit on the plaintiff, despite the fact that the plaintiff did not identify by name the specific inmates

likely to assault him. 955 F. Supp. 945, 949 (N.D. Ill. 1997). Similarly, Hemphill's case differs

from *Velez v. Johnson*, in which the Seventh Circuit found a disputed fact as to deliberate

indifference because the plaintiff had notified the defendant officer that he was having a conflict

with the inmate who attacked him.  395 F.3d 732, 736 (7th Cir. 2005).

Presented with the information given to them, Defendants acted to protect Hemphill from

his identified enemies, [A], [B], and [C].  Hemphill was kept in a different part of the prison and

ordered not to be housed with them.  Because Hemphill never identified his problem as being

one with the Gangster Disciples generally, Defendants had no actual knowledge of a gang

dispute between Hemphill and the Gangster Disciples and no actual knowledge or reasonable

belief that [E] was a threat to Hemphill.  Thus, Defendants were not deliberately indifferent to a

known risk of assault and their motion for summary judgment is granted.

## II.     Motion for Attorney Representation

On June 30, 2014, Hemphill filed a motion for attorney representation.  This is not

Hemphill's first request for attorney representation.  He initially made an oral motion on January

23, 2013, at which time he was instructed to make a written motion.  Doc. 35.  His written

motion was denied without prejudice for failure to make his own effort to obtain counsel.  Doc.

37.  His renewed motion was denied on March 1, 2013, as the Court concluded that the case was

"a routine prison conditions case and Plaintiff appears capable of representing himself."  Doc.

39.

"There is no right to court-appointed counsel in federal civil litigation."  *Olson v.

Morgan*, 750 F.3d 708, 711 (7th Cir. 2014).  The decision to appoint counsel is left to the Court's

discretion, with the Court considering whether the plaintiff has made a reasonable attempt to

obtain counsel and, if so, given the difficulty of the case, whether the plaintiff appears competent

to litigate the case himself. *Id.* The first element is satisfied here, as Hemphill has submitted letters from several attorneys declining to represent him. As for the second element, as the Judge previously assigned to this case found, the law governing Hemphill's claims is relatively straightforward. The key dispute was whether Defendants knew that [E] posed a risk to Hemphill. "While some state-of-mind issues may involve subtle questions too complex for pro se litigants, there was nothing subtle about the problem here." *Id.*; *see also Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (proving deliberate indifference not too complex for a pro se litigant); *cf. Henderson v. Ghosh*, --- F.3d ----, 2014 WL 2757473, at *6 (7th Cir. June 18, 2014) (appointment of counsel necessary where case involved complex medical evidence related to defendants' state of mind). In fact, Hemphill demonstrated his understanding of the relevant issue in his several submissions responding to Defendants' motion for summary judgment, cogently arguing the law and citing to cases. Although "[a]lmost everyone would benefit from having a lawyer," *Olson*, 750 F.3d at 711, the Court concludes that recruitment of counsel would not make a difference in the outcome of the litigation, *Pruitt v. Mote*, 503 F.3d 647, 659 (7th Cir. 2007) (denial of counsel prejudicial where "there is a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation"). Hemphill has capably represented himself; unfortunately, he has not presented evidence that he informed Defendants of a problem with [E] or more generally with the Gangster Disciples. Such evidence is not something that only an attorney would be able to present. Thus, Hemphill's motion for attorney representation is denied.

## CONCLUSION

Defendants' motion for summary judgment [50] is granted. Hemphill's motion for an extension of time [66] is denied as moot. Hemphill's motion for attorney representation [82] is denied. Hemphill's motion for a status hearing [83] is denied as moot. The Clerk is instructed to enter a Rule 58 Judgment in favor of Defendants against Plaintiff. Civil Case Terminated.

Hemphill is advised that his case is now complete. If he wishes to appeal this judgment, he must file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1). A motion for leave to appeal *in forma pauperis* should set forth the issues Hemphill plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). Should Hemphill choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal. *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Dated: July 22, 2014
Redacted Version issued October 29, 2015

                     _____

                     SARA L. ELLIS
                     United States District Judge